**In re ESTATE OF Clara NOVAK, Deceased.**

**No. CX–86–648.**

Court of Appeals of Minnesota.

Jan. 6, 1987.

Review Denied Feb. 18, 1987.

Paul E. Widick, St. Cloud, for appellant Janie Novak.

William A. Torell, Foley, for respondent deceased.

Considered and decided by HUSPENI, P.J., and SEDGWICK and LANSING, JJ., with oral argument waived.

## OPINION

SEDGWICK, Judge.

Janie Novak appeals from a denial of her motion for new trial. Appellant alleges the absence of a trial transcript prejudices the appeal. Appellant also claims the trial court erred in applying the evidentiary presumption that services rendered to family members are presumed to be gratuitous. We affirm.

## FACTS

Because the transcript of the trial was lost, the facts are submitted pursuant to Minn.R.Civ.App.P. 110.03. Both appellant and respondent provided statements of the proceedings. The trial court found both statements to be accurate and also in an addendum stated that the case presented at trial was "not particularly close."

Clara Novak suffered kidney failure in 1971. Dialysis treatment was required since November 1977. She died on June 23, 1984, just before her 71st birthday.

Clara Novak's will provided $2,000 to her church and the residue of her estate to be divided equally among her children. One daughter, Janie Novak, claims she is entitled to a greater share because she was the primary caretaker for her mother for at least six years. Janie's claim against the estate for $26,105.50 for her services was denied. Her siblings claim Janie was simply doing her part and that three other children also helped their mother.

Janie Novak claims she averaged two hours a day helping her mother. Janie became a licensed practical nurse at her mother's suggestion. She worked nights in order to help her mother during the day. She drove her mother to the Little Falls hospital 96 times for dialysis and made seven trips to the Hennepin County Medical Center. Janie also reports the loss of 16 days, 5 hours of vacation time on her mother's behalf. She incurred phone expense because of her mother's condition. She lived a quarter mile distance from her mother and was a frequent visitor. Appellant argued:

Janie * * * provided nursing services on a daily basis in Clara's home. Janie would also check her mother's blood pressure and other vital signs, bathe her, do her hair, clip her toe and fingernails, massage her scalp, and attended to other hygiene needs. Janie would do her mother's shopping for her, pay her bills, provide her with transport to and from various business establishments, and otherwise attend to her mother's needs. After one of her mother's many hospitalizations, Janie kept her mother in her own home for a period of some three months, and personally attended to her mother's various medical ailments at that time. In short, Janie provided nursing services for her mother's well-being for a period in excess of thirteen years.

The family responded that Janie merely did her share; three other siblings also helped out. The trips for dialysis were thrice weekly and since other family members gave Clara rides, 96 trips over 6 years was not an unreasonable figure. The sib-

lings state that Janie's son Jeffrey often made the dialysis trips rather than Janie. In 1978, Clara purchased a new car for the trips and paid for travel expenses. The family offered as evidence a number of checks, mostly for small amounts, payable to Janie Novak. From September 1983 to March 1984, another daughter took Clara in and cared for her. The family also points out that Clara's medical needs were satisfied by the Little Falls hospital, and that the medical services, such as blood pressure checks, temperature, etc., supplied by Janie were solely for her own peace of mind. She did not maintain records as a nurse would when providing professional services.

Finally, Janie reported that Clara intended to compensate her for her many services by selling some land and giving part of the proceeds to Janie. Clara died before the sale could be completed. Respondents argue that "the land was listed with the intent that if it were sold, the funds (were to) be used to pay for living * * * and medical expenses of Clara Novak."

## ISSUES

1. Does the absence of a trial transcript justify reversal for a new trial?

2. Did the trial court err in its use of the evidentiary presumption of gratuitous services between family members in the particular facts of the case?

## DISCUSSION

■ Appellant alleges that the parties' statements do not compensate for the absence of a transcript.

*Soukup v. City of Sleepy Eye*, 281 Minn. 144, 161 N.W.2d 36 (1968), holds that Rule 110.03 must be satisfied if a party seeks a new trial based on the absence of any part of the record. Rule 110.03 provides:

[W]here all or part of a transcript * * * cannot be obtained, this court must determine whether the question on appeal can be adequately presented without the missing portion of the transcript. It follows that, in order to properly carry out

this function, the supreme court must be able to determine what the nature of the evidence is, how it relates to the question on appeal, what its relative probative value is, and the extent to which it can be reconstructed from other sources.

*Id.* at 146, 161 N.W.2d at 37. We believe the record and the parties' statements constitute a sufficient basis for appellate review of the evidentiary presumption question.

■ The courts proceed on the premise that services provided between family/household members are gratuitous.

The presumption of gratuity is dependent on the existence of a family relation and only arises when it is shown that the services rendered were of the type which members of a family usually and ordinarily render to each other by reason of family relation. The authorities stress the fact that the presence of those reciprocal duties within the family is essential to the creation of this presumption.

*In re Estate of Tilghman*, 240 Minn. 494, 496, 61 N.W.2d 743, 745 (1953). The presumption operates if the family relation exists. However, "family relation" cannot be defined intuitively.

Appellant argues that "family" does not include a blood relation who lives independently from the person to whom the services were rendered, *i.e.*, a non-household member should not be saddled with the presumption. We believe the presumption properly applies to immediate family regardless of their residence. "Household" is simply a more inclusive term since it may include individuals residing with a family and participating in the exchange of services, but absent a blood tie. Whether or not family members reside in the same household, the question is the extent to which care furnished exceeds "reciprocal duties and mutual benefits." *Id.* at 499, 61 N.W.2d at 747.

*Tilghman* involved a middle-aged daughter who cared for her father for several years when he was infirm. Although the father resided with the daughter, the court refused to apply the presumption since the

parental-child relationship displayed a complete absence of reciprocal duties and mutual benefits.

> She never lived in her father's home after reaching the age of 16 months. There is nothing in the record to disclose that the father thereafter either supported or cared for her as his child. Neither lived in the home of the other for a period of more than 50 years following the mother's death.

*Id.* at 495, 61 N.W.2d at 745.

*In re Estate of Beecham,* 378 N.W.2d 800 (Minn.1985), represents the most recent analysis of the evidentiary presumption and its application. *Beecham* concerned a middle-aged woman, compelled to care for her husband's elderly and infirm parents two years after her marriage. The father died six months later, but the mother resided with the Beecham's for six and one-half years. The elderly Mrs. Beecham required constant care and could render no assistance to the household besides $600 a month for "room and board." She also left her familial caretakers only $1,500 from an estate of $166,000. The presumption of gratuity was overcome by this evidence and ceased to carry any evidentiary value. *Id.* at 804. An implied contract was found in order to balance the equities.

> Those types of services are beyond services usually and ordinarily gratuitously rendered to family members. Particularly is that true when the fact is considered that Alice knew her in-laws a very short time before taking them into her home, had no blood relationship to them, and accepted the onus for her mother-in-law's extended care. Admittedly, neither the degree of kinship nor the length of family relationship is dispositive on the issue. However, they are relevant and when considered in the light of qualitative and quantitative care rendered, they lend support to the trial court's finding of the existence of an implied contract under the *Tilghman* analysis. Moreover, the absence of reciprocity of services between Alice and her mother-in-law is an important factor under the *Tilghman*

analysis in the determination of whether the presumption has been overcome.

*Id.* at 804.

The evidentiary presumption arises where there is a family relationship, as evidenced by a close blood relation and/or a membership in a family's household. Once the "close" relationship is established where individuals are presumed to commonly share duties and provide services to other family members, the analysis shifts to an examination of whether the exchange of services was actually mutual and reciprocal. If one party rendered or received an obviously disproportionate share of services, the absence of mutuality may obviate the presumption.

The more distant the kinship or relationship, the easier it is to overcome the presumption since reciprocal benefits are more limited. A daughter-in-law (see *Beecham*) or a daughter with no parental contact for fifty years (*Tilghman*) will be able to avoid the presumption, while a child who has always been close to her parents will have a difficult task overcoming the presumption absent significant inequities. It must be remembered the presumption is an evidentiary device, and it is not an absolute bar to recovery.

In the present case, Janie Novak lived nearby and provided a number of services to her elderly, sick mother. Her care and assistance does not rise to the level in *Tilghman* and *Beecham* and does not appear to be disproportionate to the aid provided by her siblings. She also received one-sixth of the estate. Even if she provided more services, while others did less (and perhaps other siblings did nothing), the balancing of the equities does not justify an interference with the testamentary plan of the deceased.

### DECISION

The trial court's application of the evidentiary presumption that services between family members are deemed to be gratuitous was not clearly erroneous and was supported by the evidence.

Affirmed.